FILED
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT

### District of Kansas

(Wichita Docket)

NOV 1 2024

Clerk, U.S. District Court

By_____Deputy Clerk

UNITED STATES OF AMERICA,

                **Plaintiff,**

   v.

LAYRON DWANNIE DEJARNETTE, III,

                **Defendant.**

CASE NO. 24-6280-01-GEB

**FILED UNDER SEAL**

---

# CRIMINAL COMPLAINT

---

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

**ATTEMPTED POSSESSION WITH THE INTENT
TO DISTRIBUTE FENTANYL
[21 U.S.C. § 841(a)]**

On or about October 30, 2024, in the District of Kansas, the defendant,

**LAYRON DWANNIE DEJARNETTE, III,**

did unlawfully, knowingly, and intentionally attempt to possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl, a controlled substance.

In violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(C).

## COUNT 2

### USE OF COMMUNICATION FACILITY TO FACILITATE DRUG TRAFFICKING CRIME
### [21 U.S.C. § 843(b) and 846]

On or about October 30, 2024, in the District of Kansas, the defendant,

**LAYRON DWANNIE DEJARNETTE, III,**

did knowingly and intentionally use a communication facility, to wit: a cellular telephone, in committing, causing, and facilitating any act or acts constituting a felony under Title 21, United States Code, Sections 841(a) and 846, that is, the attempted distribution of fentanyl.

All in violation of Title 21, United States Code, Section 843(b) and 846.

## COUNT 3

### INTERSTATE AND FOREIGN TRAVEL OR TRANSPORATION IN AID OF RACKETEERING ENTERPRISES
### [18 U.S.C. § 1952(a)(3)]

On or about October 30, 2024, in the District of Kansas and elsewhere, the defendant,

**LAYRON DWANNIE DEJARNETTE, III,**

did travel in interstate commerce, that is, he traveled from the State of Arizona to

the State of Kansas, with the intent to promote or facilitate unlawful activity, that

being, the distribution and possession with intent to distribute fentanyl in violation

of Title 21, United States Code, Sections 841.

In violation of Title 18, United States Code, Section 1952(a)(3).

I further state that I am a Task Force Officer with the Drug Enforcement Agency,

and that this Complaint is based on the following facts:

SEE ACCOMPANYING AFFIDAVIT, WHICH IS INCORPORATED BY

REFERENCE AS THOUGH SET OUT IN FULL HEREIN.

Charles Williams, Special Agent
Drug Enforcement Agency

Sworn to before me and subscribed in my presence this 1st day of November, 2024,
at Wichita, Kansas.

Gwynne E. Birzer
United States Magistrate

## PENALTIES

### Count 1 (21 U.S.C. § 841(b)(1)(C))

- Punishable by a term of imprisonment of up to twenty (20) years.  21 U.S.C. § 841(b)(1)(C).

- A term of supervised release of at least three (3) years.  21 U.S.C. § 841(b)(1)(C).

- A fine not to exceed $1 million.  21 U.S.C. § 841(b)(1)(C).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

If the defendant commits such a violation after a prior conviction for a felony drug offense has become final, the penalties are:

- A term of imprisonment of up to thirty (30) years.  21 U.S.C. § 841(b)(1)(C).

- A term of supervised release of up to six (6) years.  21 U.S.C. § 841(b)(1)(C).

- A fine not to exceed $2 million.  21 U.S.C. § 841(b)(1)(C).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

### COUNT 2 (21 U.S.C. § 843(b) and 846)

- Punishable by a term of imprisonment of not more than four (4) years.  21 U.S.C. § 843(d)

- A term of supervised release of up to one (1) year.  18 U.S.C. § 3583(b)(3).

- A fine not to exceed $250,000.  21 U.S.C. § 843(d).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

- Forfeiture.

If the defendant commits such a violation after a prior conviction for the same offense, the penalties are:

- A term of imprisonment of not more than eight (8) years.  21 U.S.C. § 843(d).

- A term of supervised release of not more than three (3) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  21 U.S.C. § 843(d).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

- Forfeiture.

## COUNT 3 (18 U.S.C. § 1952(a)(3))

- Punishable by a term of imprisonment of not more than five (5) years.  18 U.S.C. § 1952(a)(3)

- A term of supervised release of up to three (3) years.  18 U.S.C. § 3583(b)(3).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

- Forfeiture.

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Charles Williams, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Special Agent with the DEA since 2019. I have received approximately 720 hours of specialized training at the DEA Academy, Quantico, Virginia, in conducting narcotics investigations, including drug interdiction, identification, smuggling, clandestine manufacture of drugs, methods of packaging, distribution of drugs, undercover operations, the laundering of drug proceeds, asset forfeiture, use of confidential sources, and the legal aspects of conducting drug investigations. Prior to my assignment with the DEA, I worked as a United States Border Patrol Agent at the Swanton, Vermont Station and Sanderson, Texas station from approximately 2009 to 2019. As a Border Patrol Agent, I received approximately 1,000 hours of training at the Border Patrol Academy in Artesia, New Mexico.

2.      While assigned with the DEA, I have participated in drug investigations, involving the unlawful manufacture of controlled substances, possession of controlled substances with the intent to distribute, distribution of controlled substances (including heroin, cocaine, marijuana and methamphetamine) and conspiracies associated with criminal drug trafficking offenses, in violation of Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute and Distribution of Controlled Substances; Section 843(b) Unlawful use of a Communication Device to Commit or Facilitate the Commission of Drug Trafficking Offenses; Section 846 Conspiracy or Attempt to Commit Drug Trafficking Offenses. In connection with my official DEA duties, I investigate criminal violations of the Controlled Substances Act.

3.      During the course of my law enforcement career and employment with the DEA, I have participated in numerous surveillance operations including physical surveillance and electronic surveillance. I have also interviewed confidential sources ("CSs") and defendants regarding various criminal activities, including narcotics trafficking. These interviews have included discussions of the use and meaning of code words to conceal criminal activity. I have also written reports and analyzed records and documents. Through my assignment with the DEA, I have gained knowledge in the use of various investigative techniques, including the use of physical surveillance, undercover agents, confidential sources, controlled purchases of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, trash searches, and the execution of federal search and arrest warrants.

4.      Based upon my training and experience, individuals who distribute illegal controlled substances often carry and possess firearms in order to protect their property, their product, their proceeds and themselves from theft or robbery. Such individuals also often accept firearms in exchanged for controlled substances in lieu of monetary payment for those controlled substances.

5.      Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe violations of 21 U.S.C. § 841 (possession with intent to distribute, or distribution of, controlled substances), 21 U.S.C. § 843 (Unlawful use of a Communication Device to Commit or Facilitate the Commission of Drug Trafficking Offenses), and 21 U.S.C § 846 (Conspiracy or Attempt to Commit Drug Trafficking Offenses) have been committed, are being committed, and/or will be committed by Layron Dwannie DEJARNETTE III, Javier Dayomashell COLMENERO-AGUILAR, Erik SANCHEZ and others.

**PROBABLE CAUSE**

6.      On October 30, 2024, Kansas Highway Patrol (KHP) Trooper / DEA Task Force Officer (TFO) Chad Moore received a phone call from the Arizona Department of Public Safety (DPS) regarding a suspected fentanyl (powder) trafficker, identified as Javier Dayomashell COLMENERO-AGUILAR, currently traveling eastbound on highway US54. According to TFO Moore, Arizona DPS had an active PING on COLMENERO-AGUILAR's 480-532-3507 cellular phone.

7.      At approximately 1558hrs, KHP K9 Handler; Technical Trooper Austin Ackerman was able to locate the black in color Chrysler Pacifica (Wisconsin 26888A) COLMENERO-AGUILAR was traveling eastbound in based off the location of the PING's provided by Arizona DPS. After observing a traffic violation committed by COLMENERO-AGUILAR, the driver of the Chrysler Pacifica, in which COLMENERO-AGUILAR drove in speeds 18 miles per hour (mph) over the legal 65 mph speed limit for that particular area of highway, Trooper Ackerman and KHP Interdiction Trooper Cody Parr were able to initiate a traffic stop in Ford County, Kingsdown, Kansas, at mile-marker 80.

8.      Prior to the search of the Chrysler Pacifica, Troopers Ackerman and Parr were given permission by COLMENERO-AGUILAR to search the Chrysler Pacifica. During the search of the vehicle, a large, flat, square-in-shape package, wrapped in black electric tape, was discovered in a natural void underneath the Chrysler Pacifica. Trooper Parr proceeded with placing COLMENERO-AGUILAR under arrest and reading him his Miranda rights. COLMENERO-AGUILAR admitted that he was being paid approximately $3,000.00 USD to transport the suspected fentanyl from Phoenix, Arizona to Wichita, Kansas.

9.      According to an interview conducted by TFO Moore, after COLMENERO-AGUILAR's arrest, COLMENERO-AGUILAR stated that he received the kilogram of suspected fentanyl powder from a black male he called **Fresh**, who was later identified as Layron Dwannie DEJARNETTE III, in Phoenix, Arizona. Once COLMENERO-AGUILAR received the suspected fentanyl, COLMENERO-AGUILAR stated that he assisted three other men with placing the suspected fentanyl underneath the Chrysler Pacifica in a natural void. COLMENERO-AGUILAR also stated to KHP Moore that in addition to being paid $3,000.00 USD for transporting the suspected Fentanyl to Wichita, Kansas, COLMENERO-AGUILAR was also to have his rent and car note paid by DEJARNETTE III. COLMENERO-AGUILAR also stated that DEJARNETTE III had traveled to Wichita, Kansas, via commercial airline, the previous day and was staying at a Marriott located at 9100 Corporate Hill drive, Wichita, Kansas. According to COLMENERO-AGUILAR, DEJARNETTE III was to rendezvous with COLMENERO-AGUILAR at the Marriott in Wichita, Kansas, and then meet with a buyer, who would purchase the suspected fentanyl for approximately $30,000.00 USD. After the drug transaction, DEJARNETTE was to travel back to Phoenix, Arizona with COLMENERO-AGUILAR, and COLMENERO-AGUILAR's travel companion, Erik SANCHEZ. SANCHEZ is a known participant in this drug trafficking organization and was also arrested with COLMENERO-AGUILAR as his accomplice.

10.     COLMENERO-AGUILAR and SANCHEZ agreed to assist Wichita, Kansas (WRO) DEA with the delivery of the suspected fentanyl to DEJARNETTE III, who was supposedly residing at the Marriott hotel, located at 9100 Corporate Hill drive, Wichita, Kansas. It was later discovered that DEJARNETTE III was not staying at a Marriott, but a Hilton.

11.     Due to strict policy regarding the no-use of fentanyl in enforcement operations, DEA manufactured a non-drug replica (Sham) of the fentanyl that was seized from the Chrysler Pacifica and placed it into a black computer bag. The Sham was given to COLMENERO-AGUILAR and SANCHEZ, as well as a monitoring device. An in-depth search of the Chrysler Pacifica, COLMENERO-AGUILAR and SANCHEZ by Kansas Highway Patrol and DEA revealed that no items that could potentially compromise the integrity of the operation were found.

12.     During the control delivery operation, DEJARNETTE III informed COLMENERO-AGUILAR, via cellular phone, that he was not staying at the Marriott hotel as suspected, but the Hilton Garden Inn located at 401 E Douglas Ave, Wichita, Kansas 67202. COLMENERO-AGUILAR agreed to bring the suspected fentanyl to that location for DEJARNETTE III to take possession of.

13.     At approximately 2223hrs, the Chrysler Pacifica was observed by WRO agents pulling up besides DEJARNETTE III, who was standing against the northeast corner of the Hilton Garden with a hoodie on. DEJARNETTE III was observed by SA Jacob Seibel and your Affiant leaning into the Chrysler Pacifica and taking possession of the black computer bag that contained the suspected fentanyl (Sham). Once WRO agents observed the completed transaction, WRO agents initiated a tactical takedown of DEJARNETTE III. However, DEJARNETTE III immediately fled from WRO agents at the sight of your Affiant exiting an unmarked vehicle with tactical gear, equipment and police insignia clearly visible and brandished. During DEJARNETTE III's attempt to flee, he dropped the black computer bag containing the suspected Fentanyl (Sham), which your Affiant recovered after DEJARNETTE III was taken into federal custody at the intersection of Douglas and Emporia.

14.    DEJARNETTE III was transported to the WRO by a marked Wichita Police Unit, where he agreed to be interview by TFO Moore and SA Jacob Seibel. According to TFO Moore and SA Seibel, DEJARNETTE III did not admit to traveling to Wichita, Kansas to acquire fentanyl to sell for a substantial amount of U.S. Currency. DEJARNETTE III only revealed that his intentions for traveling to Wichita, Kansas was to acquire currency.

15.    Collaborators COLMENERO-AGUILAR and SANCHEZ were released at the conclusion of the control delivery pending future indictment and prosecution. DEJARNETTE III was booked and transported to Sedgwick County Jail to await further judicial proceedings.

16.    Your Affiant requests the Court order that all papers in support of this application, including the affidavit, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____

Charles Williams
Special Agent
DEA

Subscribed and sworn to before me on ____November 1____, 2024

_____
HONORABLE GWYNNE E. BIRZER

6